## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No. 14-CIV-60493-BLOOM/Valle

CYNTHIA BOZEMAN,

      Plaintiff,

v.

ALVIN POLLOCK, individually, and
SHERIFF OF BROWARD COUNTY,
Scott J. Israel,

      Defendants.

_____/

### ORDER DENYING MOTION FOR NEW TRIAL

THIS CAUSE is before the Court upon Defendants, Alvin Pollock and Scott J. Israel's Renewed Motion for Judgment as a Matter of Law, or, in the Alternative, Motion for New Trial or Motion to Amend, Alter or Remit the Final Judgment, ECF No. [88] ("Motion"). After careful review of the Motion, the record, the parties' respective submissions, and the applicable law, the Court is now fully advised. For the reasons set forth below, the Motion is denied.

### I. BACKGROUND

Plaintiff Cynthia Bozeman ("Plaintiff" or "Bozeman") commenced this action on February 27, 2014, asserting claims against Defendants, Alvin Pollock ("Pollock") and Scott J. Israel, Sheriff of Broward County (collectively, "Defendants"), for false arrest cognizable under 42 U.S.C. § 1983 and state law. *See* Complaint, ECF No. [1].

On August 13, 2013, Bozeman filled out a Petition for Injunction for Protection against Domestic Violence pursuant to § 741.30, Florida Statutes ("Petition") against her live-in boyfriend, William Shaw ("Shaw"). Responding to the Petition, the Circuit Court of the

1

Seventeenth Judicial Circuit in and for Broward County, Florida issued a Temporary Injunction for Protection against Domestic Violence ("TRO" or "Injunction") naming Shaw as the respondent.  Shortly thereafter, Defendant Pollock and another deputy served the TRO upon Shaw and requested that Shaw vacate Bozeman's residence.  Shaw complied and departed the area.  A mere seven hours later, at 3:35 a.m. on August 14, 2013, Bozeman placed a 911 call indicating that Shaw had returned to her residence in violation of the TRO.  Upon his arrival, Pollock found Shaw naked in the bedroom.  According to Shaw, Bozeman had invited him back to the residence, even assisting him in hiding his car down the street in case officers or Bozeman's sister, were to pass by.  Pollock then confronted Bozeman with Shaw's version of the night's events.  When presented with Shaw's account, Bozeman states that she vehemently denied any such assertions.  Pollock, however, claims that Bozeman did nothing and failed to deny Shaw's accusations.  Pollock then arrested both Bozeman and Shaw for violating the terms of the TRO and placed the two in the back of his vehicle.

In early February 2015, the parties moved for summary judgment, primarily on the issue of qualified immunity.  *See* Motions for Summary Judgment, ECF Nos. [34] and [38].  The Court denied the motions.  *See* Order on Cross-Motions for Summary Judgment, ECF No. [52] ("Summary Judgment Order").  When viewing the record in the light most favorable to Bozeman,[1] the Court found that Pollock conducted, at best, a cursory investigation into Bozeman's version of the events in contravention of the requirement that he "conduct a reasonable investigation to establish probable cause."  *See id.* at 19-22; *Rankin v. Evans*, 133 F.3d 1425, 1435 (11th Cir. 1998) ("An arresting officer is required to conduct a reasonable

---

[1] "[W]hen conducting a qualified immunity analysis, district courts must take the facts in the light most favorable to the party asserting the injury." *Robinson v. Arrugueta*, 415 F.3d 1252, 1257 (11th Cir. 2005) (citation omitted).

investigation to establish probable cause.") (citation omitted); *see also Howard v. Gee*, 538 F. App'x 884, 890-91 (11th Cir. 2013) (noting that where the "officers failed to take even the most basic investigatory steps . . . the question of arguable probable cause [cannot] be decided at the summary judgment stage.") (citation omitted).   Because, according to Bozeman, Pollock immediately credited Shaw's version of the events and made "no effort to ascertain whether Bozeman, a petitioner for protection against domestic violence, was actually in need of assistance or was otherwise truthful," the question of qualified immunity was not susceptible to resolution at summary judgment.  *See* Summary Judgment Order at 24.  Accordingly, on June 8, 2015, this matter proceeded to a jury trial.

After three days of evidence, the case was submitted to the jury. Prior to its verdict, the jury asked two questions: (1) "In the temporary injunction is there case law that allows or disallows respondent or petitioner from committing violation restraining order?  Defense issue rule from Judge states, 'any person' cannot violate order"; and (2) "Please clarify if instructions to Jury of law is what we follow (Court instruction to Jury) or injunction document (Florida Statute 741.30)."  *See* Trial Transcript Excerpts, ECF No. [88-6] at 5:11-16, 6:17-20.  The Court instructed the jury to rely on the jury instructions on the law as provided as to the first question, and to apply the law in the Court's instruction to the evidence of the case as to the second.  *Id.* at 5:23-6:1, 8:16-19.  The jury then returned a verdict in favor of Bozeman.  Specifically, the jury answered "No" to the question of "Do you find by a preponderance of the evidence that . . . Pollock had probable cause to arrest [] Bozeman?" and "No" to the question "Do you find by a preponderance of the evidence that . . . Pollock had probable cause to arrest [] Bozeman?"  *See* First Verdict Form, ECF No. [88-8]; Final Verdict Form, ECF No. [81].  The jury's initial verdict form awarded Bozeman $10,000 in compensatory damages.  *See* First Verdict Form, ECF

No. [88-8] at 2.   The jury also found punitive damages by clear and convincing evidence regarding Pollock's intentional misconduct (Question 7) in the amount of $50,000; however, the jury failed to award punitive damages on the lesser preponderance-of-the-evidence standard as to any potential malice or reckless indifference (Question 6).  *See id.* at 2-3.  Although Questions 6 and 7 required the application of different standards, the Court and the parties quickly recognized the potential inconsistency and instructed the jury to return to their deliberations regarding Questions 6, 7, and 8, concerning Bozeman's entitlement to, and the amount of, punitive damages.   Trial Transcript Excerpts, ECF No. [88-6] at 17:23-18:19 ("I would ask that you return to the jury room to reconcile the inconsistency between Questions 6 and 7, and ultimately Question 8, and arrive at a verdict that is consistent with the law.").  Upon re-deliberation, the jury reconsidered the aforementioned Questions and concluded that there was no liability for punitive damages under either standard and awarded Bozeman $60,000 in compensatory damages.  *See* Final Verdict Form, ECF No. [81] at 2-3.  Over Defendants' objection, the Court then entered judgment in favor of Bozeman in the amount of $60,000.00.  *See* Final Judgment, ECF No. [84].

## II. DISCUSSION

On July 8, 2015, Defendants filed the instant Motion seeking relief under Rules 50, 59, and 60 of the Federal Rules of Civil Procedure.  *See* Mot., ECF No. [88].  Defendants assert that Pollock is entitled to qualified immunity and, therefore, judgment as a matter of law under Fed. R. Civ. P. 50(b) as to Bozeman's § 1983 claim because it was not "clearly established" that a petitioner who obtained an injunction or temporary restraining order could not be subject to arrest for violating the same.  Next, Defendants contend that they are entitled to a new trial pursuant to Fed. R. Civ. P. 59(a) as the jury instructions were erroneous and misleading.  Last,

Defendants seek to set aside the jury verdict under Rules 59 and 60 because the jury failed to follow the Court's instructions and returned with an improper "compromise" verdict.  None of these arguments persuade the Court that a new trial is warranted.

### A.    Rule 50(b) Motion, Judgment as a Matter of Law

At the close of Bozeman's case-in-chief and prior to the Court's submission of the matter to the jury, Defendants moved for judgment as a matter of law under Rule 50(a).  *See* Trial Transcript Excerpt, Day 2, ECF No. [85] at 5:23-13:17.  Renewing their argument from their summary judgment motion, Defendants argued that the law was not clearly established that a petitioner for protection against domestic violence was immune from violating the injunction he or she obtained, especially the situation Pollock believed he was confronted with the night of the arrest.  Thus, Defendants once again asserted that Pollock was entitled to qualified immunity. *See id.*  Citing the same reasons for the denial of summary judgment, the Court denied the motion.  *Id.* at 13:18-14:21.  Pursuant to Rule 50(b), Defendants have timely and properly renewed their arguments once again.[2]

"Under Rule 50, a party's motion for judgment as a matter of law can be granted at the close of evidence or, if timely renewed, after the jury has returned its verdict, as long as there is no legally sufficient evidentiary basis for a reasonable jury to find for the non-moving party." *Chaney v. City of Orlando, Fla.*, 483 F.3d 1221, 1227 (11th Cir. 2007) (internal quotation and

---

[2] Rule 50(b) requires the motion to be made no later than twenty-eight (28) days after the entry of judgment.  *See* Fed. R. Civ. P. 50(b).  Further, this renewed motion is confined to the arguments presented with respect to the party's Rule 50(a) motion so as to avoid .  *Exxon Shipping Co. v. Baker*, 554 U.S. 471 n.5 (2008) ("A motion under Rule 50(b) is not allowed unless the movant sought relief on similar grounds under Rule 50(a) before the case was submitted to the jury."); *Shannon v. Bellsouth Telecommunications, Inc.*, 292 F.3d 712 n.3, 717 (11th Cir. 2002) ("If a party asserts new grounds in its renewed motion for judgment as a matter of law that it did not assert in its initial motion for judgment as a matter of law, a court may not rely on the new grounds to set aside the jury's verdict." (internal quotation and citation removed)).  Defendants have complied with these requirements.

formatting removed).  Put simply, the sole consideration for the court concerns sufficiency of the evidence: as a legal matter, was the evidence sufficient to support the jury's verdict.  *See id.* (citing *Lipphardt v. Durango Steakhouse of Brandon, Inc.*, 267 F.3d 1183, 1186 (11th Cir. 2001) ("[A] court's sole consideration of the jury verdict is to assess whether that verdict is supported by sufficient evidence.") (citation omitted).  In making this determination, however, the jury's findings must be disregarded.  *See id.* ("The jury's findings should be excluded from the decision-making calculus on a Rule 50(b) motion, other than to ask whether there was sufficient evidence, as a legal matter, from which a reasonable jury could find for the party who prevailed at trial.").  The standard by which the motion is reviewed is the same regardless of whether the motion is brought pursuant to Rule 50(a) or 50(b).  *Id.* (citing *Cleveland v. Home Shopping Network, Inc.*, 369 F.3d 1189, 1192 (11th Cir. 2004); *Arthur Pew Constr. Co. v. Lipscomb*, 965 F.2d 1559, 1563 (11th Cir. 1992); 9A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2537 (2d ed. 1995)).

When reviewing a motion under Rule 50, the Court is obligated to review the evidence in the light most favorable to the non-moving party.  *Hanes v. Greyhound Lines, Inc.*, 316 F. App'x 841, 842 (11th Cir. 2008) (citing *Daniel v. City of Tampa*, 38 F.3d 546, 549 (11th Cir. 1994)); *Sherrod v. Palm Beach Cnty. Sch. Dist.*, 424 F. Supp. 2d 1341, 1344 (S.D. Fla. 2006) ("[The Court] must view the evidence in a light most favorable to the plaintiff, and must not weigh the evidence nor assess witness credibility." (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000))).  Thus, as the Eleventh Circuit has noted, "[w]here there is no change in the evidence, the same evidentiary dispute that got the plaintiff past a summary judgment motion asserting the qualified immunity defense will usually get that plaintiff past a Rule 50(a) motion

asserting the defense, although the district court is free to change its mind." *Johnson v. Breeden*, 280 F.3d 1308, 1318 (11th Cir. 2002) (citing *Abel v. Dubberly*, 210 F.3d 1334 (11th Cir. 2000)).

As indicated, Defendants assert that Pollock is entitled to qualified immunity because the unconstitutionality of his actions was not "clearly established" at the time of Bozeman's arrest. Qualified immunity protects "government officials performing discretionary functions" from "civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *see also Shepard v. Peryam*, 657 F. Supp. 2d 1331, 1344 (S.D. Fla. 2009) (citing *Thomas v. Roberts*, 261 F.3d 1160, 1170 (11th Cir. 2001)).   Once it has been established that the officer was acting within his discretionary authority,[3] the plaintiff bears the burden to demonstrate that the officer's actions "violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow*, 457 U.S. at 818; *see also Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002); *Madiwale v. Savaiko*, 117 F.3d 1321, 1324 (11th Cir. 1997).   The question of whether a right is "clearly established" involves a determination of whether the contours of the right are "clear enough for any reasonable official in the defendant's position to know that what the official is doing violates that right." *Shepard v. Peryam*, 657 F. Supp. 2d 1331, 1345 (S.D. Fla. 2009) (citing *Anderson v. Creighton*, 483 U.S. 635, 639-40 (1987)) (internal quotations removed); *Skrtich v. Thornton*, 280 F.3d 1295, 1303 (11th Cir. 2002) (noting that the court is not concerned with the subjective intent of the officer but, "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted") (citation omitted).

---

[3] There is no dispute over whether Pollock was engaged in a discretionary function.

"The inquiry is not merely into the relevant statutory law, but also into relevant precedent." *N.C. ex rel. Boston v. Alonso*, No. 12-61646-CIV, 2013 WL 6564217, at *5 (S.D. Fla. Dec. 13, 2013) (citing *United States v. Lanier*, 520 U.S. 259, 268 (1997); *Reichle v. Howards*, 132 S. Ct. 2088, 2093 (2012)).   When considering existing precedent, the precedent must be so clear as to "have placed the statutory or constitutional question beyond debate." *Reichle*, 132 S. Ct. at 2093 (quoting *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2083 (2011) ("We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate.")).   Notwithstanding this clarity requirement, prior precedent on the subject "need not be factually identical to the circumstances in the case at bar in order to provide an official with 'fair warning' that his actions violate clearly established constitutional rights." *N.C.*, 2013 WL 6564217, at *6 (citing *Lanier*, 520 U.S. at 268-72 (noting that the Court was unpersuaded that "the extreme level of factual specificity envisioned by the Court of Appeals is necessary in every instance to give fair warning")) (further citations omitted); *see also Stanton v. Sims*, 134 S. Ct. 3, 5 (2013) ("We do not require a case directly on point before concluding that the law is clearly established . . . ." (quotation and citation omitted)).   "This is not to say an official action is protected by qualified immunity unless the very action in question has previously been held unlawful . . . but it is to say that in the light of pre-existing law the unlawfulness must be apparent." *Hope*, 536 U.S. at 739.   "As the Supreme Court has explained, officials can still enjoy fair warning that their actions violate established law even in unique factual circumstances." *N.C.*, 2013 WL 6564217, at *6 (citing *Hope*, 536 U.S. at 741).

Ultimately, "[t]he dispositive question is whether 'it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" *Poulakis v. Rogers*, 341 F.

App'x 523, 526 (11th Cir. 2009) (quoting *Saucier v. Katz*, 533 U.S. 194, 202 (2001)). Nevertheless, where the evidence, "viewed in the light most favorable to the plaintiff, shows there are facts that are inconsistent with qualified immunity being granted," the case must be submitted to the jury. *Johnson*, 280 F.3d at 1317.

In short, Pollock asserts that the lack of factually analogous legal precedent necessitates the conclusion that the law was not "clearly established" so as to provide Pollock with fair warning of the unconstitutionality of his actions. The Court disagrees.

First, the mere lack of controlling authority concerning this precise factual scenario does not, alone, yield the conclusion that qualified immunity should apply. As noted by the Supreme Court in *Hope*, an officer can be found to have violated clearly established law in novel factual circumstances. *536* U.S. at 741. Defendants rely heavily on the case of *Byford v. Stephens*, 299 F. Supp. 2d 1253 (S.D. Fla. 2003) for their argument that it was not clearly established that a petitioner under a domestic violence injunction could not be arrested under the facts of this case. However, as stated by the Court at summary judgment, *Byford* is factually inapposite and provides little support for the conclusion that Pollock's arrest of Bozeman was valid in light of the circumstances. For economy's sake, the Court readopts its recitation of the facts in *Byford*:

> In Byford, the plaintiff obtained a TRO for protection against domestic violence naming her uncle as the respondent and stating, under oath, that she faced "an immediate and present danger of repeat violence." *See id.* at 1254, 1259. Despite this statement, the day after obtaining the TRO, the plaintiff travelled to the day care center where she knew the respondent's minor daughter was registered. *Id.* at 1255. The plaintiff was not employed by the day care and her own children were not enrolled there. Id. Moreover, the plaintiff was aware that the respondent would be returning to the day care to retrieve his daughter at the time the plaintiff arrived. *Id.* When the respondent arrived as scheduled, the plaintiff called the police to report a violation of the TRO. *Id.* The following day, the plaintiff again returned to the day care at the time when the respondent was scheduled to pick up his daughter,

and again phoned the police via 911 to report a violation of the TRO. *Id.* at 1255-56. The same officer responded, and after speaking with plaintiff, approached the respondent as he was departing the day care. *Id.* at 1256. The respondent informed the officer that the plaintiff had no basis to be at the day care and provided the officer with documentation legitimizing his right to pick up his daughter at that location and at that time. *Id.* at 1256-57. Believing that the plaintiff herself had violated the TRO, the officer arrested her. *Id.* at 1257. After reviewing the record in the light most favorable to the plaintiff, the Court concluded that the officer was entitled to qualified immunity because a reasonable officer could have believed that probable cause existed to arrest the plaintiff for either falsely reporting a violation of the TRO or for violating §§ 817.49 and 837.05, Florida Statutes, which criminalize the false reporting of crimes. *See id.* at 1260-61.

Summary Judgment Order at 22-23. "[A]lthough there was no clear term in the TRO restraining [the plaintiff]," like with the TRO here, the *Byford* Court looked to "evidence as to reasonable custom, training, practice and [the officer's] review and understanding of the specific language in the TRO" in order to determine whether the law was clearly established. *Byford*, 299 F. Supp. 2d at 1262. Relying on the evidence presented in the officer's favor, such as the testimony of other officers supporting the arresting officer's decision, the *Byford* Court found that the officer's mistake as to the law was reasonable. *Id.* at 1262-63. In contrast, no evidence is presented here which would yield the same conclusion as to Pollock's actions. More critically, the language of the injunction that was subjected to the officer's interpretation in *Byford* differs from the injunction obtained by Bozeman. The *Byford* injunction stated that "*[a]ny* party violating this injunction may be subject to civil or indirect criminal contempt proceedings, including the imposition of a fine or imprisonment, and also may be charged with a crime punishable by a fine, jail, or both, as provided by Florida Statutes." *See* Summary Judgment Order at 23. On the other hand, the TRO that Bozeman allegedly violated contained no similar language and placed restrictions *solely* upon the named respondent, Shaw. Ultimately, the discrepancies between

*Byford* and this case are not the fatal blow to Defendants' argument.  Rather, the inquiry centered upon Pollock's failure to properly investigate.

Even accepting that it was not clearly established that Pollock could not arrest a named petitioner for violating the injunction he or she obtained, it was clearly established that an officer must conduct a reasonable investigation before effectuating an arrest.  In this respect, Defendants appear to overlook the crux of the Court's holding at summary judgment.  At that stage, the Court's decision was predicated on a finding that, based on Bozeman's narrative—which the Court was required to credit there and is again required to credit here—Pollock failed to conduct "even a minimal investigation."  *See* Summary Judgment Order at 20 (citing *Kingsland v. City of Miami*, 382 F.3d 1220, 1232 (11th Cir. 2004) ("As discussed, there are several questions of fact regarding the information the defendants possessed or could have possessed had they chosen to investigate as a reasonable officer would have done.  Without further fact finding, it is impracticable to conclude that arguable probable cause existed for [defendant's] arrest . . . ."); *Green v. Miceli*, No. 09-CV-60965, 2010 WL 1249130, at *7 (S.D. Fla. Mar. 25, 2010) (finding that issues of fact precluded qualified immunity where, *inter alia*, issues remained as to whether the defendant conducted a reasonable investigation)).  Noting that "impropriety arises when an officer "elect[s] not to obtain easily discoverable facts," *Kingsland* at 1229, Pollock's absolute lack of inquiry with respect to Bozeman's version of the events and unmitigated acceptance of Shaw's account [was] incompatible with a finding that Pollock conducted a reasonable investigation as a matter of law."  Summary Judgment Order at 21; *see also Howard*, 538 F. App'x at 890-91 (affirming district court's denial of qualified immunity where defendant, among other things, "ignored [plaintiff's] version of events" and, therefore, failed to establish that he conducted a reasonable investigation).   This conclusion still rings true.   Under the facts

presented and when viewing those facts in the light most favorable to Bozeman, a reasonable jury could have concluded that Pollock failed to comply with this requirement.[4]   Accordingly, the same factual issue that precluded the grant of qualified immunity at the summary judgment stage also forestalls the relief sought in the instant Motion under Rule 50.  *See Breeden*, 280 F.3d at 1318 (citation omitted).

### B.    Motion for New Trial

Defendants next contend that a new trial is warranted for two distinct reasons, both concerning the Court's instruction to the jury.  First, Defendants aver that the jury instruction regarding false arrest under § 1983 was misleading and confusing and that the use of the criminal jury instruction as to Fla. Stat. § 741.31 was inappropriate in this civil case.  Second, Defendants argue that the Court erred by refusing to instruct the jury on "other crimes," thereby making it so that the jury was "forced to conclude that Deputy Pollock violated the law."  The Court disagrees

---

[4] At trial, Bozeman again reiterated her version of the events.  Thus, it was reasonable for a jury to conclude that Pollock's investigation into what had occurred was inadequate and find that Pollock lacked probable cause to arrest.  This facet of the jury's inquiry was included in the Court's instruction:

> Officers are required to conduct a reasonable investigation, but are not required to take every conceivable step to eliminate the possibility of arresting an innocent person or independently investigate every claim of innocence.  Officers are not required to perform [] error-free investigations to establish probable cause. On the other hand, officers are required to conduct a reasonable investigation to establish probable cause and may not conduct their investigation in a biased fashion, or elect not to obtain easily discoverable facts relevant to the determination of probable cause. Nor may officers investigate selectively, or turn a blind eye to exculpatory information that is available to them and instead support their actions on selected facts they chose to focus upon.

*See* Court's Jury Instructions, ECF No. [77] at 8.

with Defendants' interpretation of the Court's instruction and finds that a new trial is unnecessary.

A court may grant a new jury trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a). For instance, a party may assert that "the verdict is against the weight of the evidence, that the damages are excessive, or that, for other reasons, the trial was not fair to the party moving." *Montgomery Ward & Co. v. Duncan*, 311 U.S. 243, 251 (1940). Thus, a motion for new trial should be granted "when the verdict is against the clear weight of the evidence or will result in a miscarriage of justice, even though there may be substantial evidence which would prevent the direction of a verdict."[5] *Brown v. Sheriff of Orange Cnty., Fla.*, 604 F. App'x 915 (11th Cir. 2015) (per curiam) (quoting *Lipphardt v. Durango Steakhouse of Brandon, Inc.*, 267 F.3d 1183, 1186 (11th Cir. 2001)). Additionally, the motion "may raise questions of law arising out of alleged substantial errors in admission or rejection of evidence or instructions to the jury." *Id.* "[G]ranting motions for new trial touches on the trial court's traditional equity power to prevent injustice and the trial judge's duty to guard the integrity and fairness of the proceedings before [her] . . . ." *Sherrod v. Palm Beach Cnty. Sch. Dist.*, 237 F. App'x 423, 424 (11th Cir. 2007) (quoting *Christopher v. Florida*, 449 F.3d 1360, 1366 n.4 (11th Cir. 2006)). Ultimately, "motions for a new trial are committed to the discretion of the trial court." *Montgomery v. Noga*, 168 F.3d 1282, 1295 (11th Cir. 1999).

As noted, Defendants argument under Rule 59 is predicated upon the Court's instruction to the jury. "A district court is permitted wide discretion in considering a motion for new trial based on an erroneous jury instruction." *Steger v. Gen. Elec. Co.*, 318 F.3d 1066, 1081 (11th

---

[5] "[N]ew trials should not be granted on evidentiary grounds unless, at a minimum, the verdict is against the great—not merely the greater—weight of the evidence." *Tucker v. Hous. Auth. of Birmingham Dist.*, 229 F. App'x 820, 826 (11th Cir. 2007).

Cir. 2003) (citing *Deas v. PACCAR, Inc.*, 775 F.2d 1498, 1503 (11th Cir. 1985)).   Jury

instructions merit a new trial where the instructions give the jury "a misleading impression or

inadequate understanding of the law and the issues to be resolved."   *Id.* (quoting *Stuckey v.*

*Northern Propane Gas Co.*, 874 F.2d 1563, 1571 (11th Cir. 1989)).   Indeed, the Eleventh Circuit

has noted that reversal on instructions only occurs where there is "substantial and ineradicable

doubt as to whether the jury was properly guided in its deliberations."   *U.S. S.E.C. v. Big Apple*

*Consulting USA, Inc.*, 783 F.3d 786, 804 (11th Cir. 2015) (citing *McCormick v. Aderholt*, 293

F.3d 1254, 1260 (11th Cir. 2002)).

In instructing the jury as to Bozeman's claim for false arrest under 42 U.S.C. § 1983, the

Court's included a specific instruction regarding the crime of violation of an injunction for

protection against domestic violence under Fla. Stat. § 741.31.   *See* Court's Jury Instructions,

ECF No. [77] at 7.   The instruction read:

> It is a criminal offense for any person to commit the offense of a
> violation of an Injunction for Protection Against Domestic
> Violence.
>
> The crime of Violation of an Injunction for Protection Against
> Domestic Violence consists of two elements.
>
> 1.      A temporary or final injunction for protection against
>         domestic violence was issued by a court against the
>         Respondent; and
>
> 2.      Respondent willfully violated the injunction.

*Id.*  Defendants objected to this instruction, asserting that this language, derived from the Florida

Standard Criminal Jury Instructions, was inapplicable to this case.     *See* Trial Transcript

Excerpts, ECF No. [88-1] at 28:4-14.   Rather, Defendants requested that the Court simply

instruct the jury that "[i]t is a criminal offense for a person to willfully violate an injunction for

protection against domestic violence," and make no reference to the elements of the crime for

which Bozeman had been arrested for.  *See* Joint Proposed Jury Instructions, ECF No. [56] at 13. Defendants now renew this objection and, with the benefit of the jury's questions asked during deliberations, contend that the instruction was misleading.  As noted, the Court disagrees.

The crux of Defendants' argument is that the jury was instructed that if Bozeman did not commit the crime of violating an injunction under § 741.31, then Pollock could not have had probable cause.  This assertion ignores the remainder of the jury instructions.  The jury was not instructed that Pollock was required to have crime-specific probable cause; on the contrary, the jury was informed that Pollock would possess probable cause when he reasonably believed that Bozeman "[had] committed, [was] committing, or [was] about to commit *an* offense."[6]  *See* Court's Jury Instructions at 7 (emphasis added).  Additionally, the jury was instructed that arguable probable cause existed if Pollock "could have believed that probable cause existed," *id.* at 8, further reflecting the leniency afforded to law enforcement officers in the execution of their duties.  As Bozeman aptly notes, the instruction left resolution of whether Pollock had a reasonable belief that Bozeman had violated the law to the jury.

The jury's questions during deliberations do nothing to persuade the Court that they were bewildered as to the law.  While the questions sought clarification on certain matters related to whether Bozeman could commit a violation of the injunction, the questions did not indicate that the instructions were confusing.  Rather, the questions merely indicate that the jury was potentially uncertain as to whether the terms of the injunction governed, a question undoubtedly resolved by the fact that a violation of the statute necessarily requires a violation of the

---

[6] The instruction read in full: "Alvin Pollock may arrest a person without a warrant whenever the facts and circumstances within Alvin Pollock's knowledge, based on reasonably trustworthy information, would cause a reasonable police officer to believe that the person has committed, is committing, or is about to commit an offense."  Court's Jury Instructions at 7.

injunction, as the Court's instructions indicated.  *See* Court's Jury Instructions at 7 (stating that the alleged crime requires a person's violation of the injunction).

Following the pattern jury instructions provided by the Eleventh Circuit, the Court "describe[d] [the] criminal offense [the] plaintiff was alleged to have committed."  Pattern Jury Instructions, Civil Cases, Eleventh Circuit, 5.2 (2013 revision) (internal formatting removed). Indeed, it is a crime for an individual to violate Fla. Stat. § 741.31.  Proceeding forward, the Court then offered an instruction as to what the aforementioned crime entailed, namely, the presence of an injunction and a violation thereof.[7]  *See* Court's Jury Instructions at 7. Defendants cite no authority which would indicate that the inclusion of criminal elements of the alleged crime is improper and the Court is unable to locate the same.  *See generally Phillips v. Hillcrest Med. Ctr.*, 244 F.3d 790, 800 n.10 (10th Cir. 2001) ("A litigant who fails to press a point by supporting it with pertinent authority, or by showing why it is sound despite a lack of supporting authority or in the face of contrary authority, forfeits the point.  The court will not do his research for him." (internal quotations omitted)).  More to the point, the inclusion of "respondent" in this definition as well as the use of "any person,"[8] was not only proper but also, not confusing.  In reality, what Defendants complain of is the inescapable conclusion that Bozeman was legally incapable of committing the crime she was arrested for.  Granted, this does not foreclose a finding of probable cause as probable cause may be found where the officer

---

[7] In order to avoid confusion, the Court substituted "defendant" for "Respondent."  *See* Trial Transcript Excerpts, ECF No. [88-1] at 28:16-29:11.  Defendants asserted that it should remain "defendant," in an apparent attempt to elicit confusion, arguing that Bozeman was not the respondent.  *See id.*  This distinction has no difference; Bozeman was neither the defendant in an underlying criminal prosecution under § 741.31 nor the respondent named in the injunction.

[8] To clarify, the potential confusion Defendants harp on is the statement that "any person" can commit the offense of a violation of § 741.31, but the elements of the crime, as set forth by the Court, only include reference to "the respondent."

reasonably believes that the suspect "had committed or was committing an offense," *Gerstein v. Pugh*, 420 U.S. 103, 111 (1975), or where an individual had not actually violated the law but the officer was objectively reasonable in believing that he or she had, see *Arrington v. Kinsey*, 512 F. App'x 956, 958 (11th Cir. 2013) (citing *Kingsland*, 382 F.3d at 1226) (noting that the reasonableness of the officer's belief "is objective and based on the totality of the circumstances."). However, the jury was instructed on this aspect of the law thereby ameliorating any confusion. *See* Court's Jury Instructions at 7, 14 (defining probable cause). Defendants offered no additional instructions regarding the issue of probable cause other than the inclusion of "other crimes," which the Court rejected and rejects again now.

Defendants also requested that the jury be instructed on possible "other crimes" that Pollock could have believed applied to Bozeman's perceived actions, including a theory of aiding and abetting Shaw's violation of the Injunction and Bozeman's attempted modification to the Injunction. *See* Proposed Instructions at 14. Regarding the latter theory, Defendants implored the Court to offer the following instruction: "courts are required to ensure that the parties have a clear understanding of the terms of the injunction, the penalties for failure to comply, and that *they cannot amend the injunction verbally, in writing, or by invitation to the residence*." *Id.* (emphasis supplied). This modification theory instruction is a verbatim recitation of Fla. Stat. § 741.2902(2)(b). Defendants' motivation in this respect was clear: Pollock believed that Bozeman sought to modify the injunction by inviting Shaw back to the residence, thereby utilizing the injunction as a sword to get Shaw arrested. According to Defendants, this supposed modification supports a finding of probable cause. However, neither § 741.2902, nor the complementary language found in the injunction, establish criminal liability for a petitioner who invites the respondent back to the residence.

Section 741.30, Florida Statutes, prohibits a court from issuing mutual orders of protection.  Fla. Stat. § 741.30(1)(i) ("The court is prohibited from issuing mutual orders of protection.").  In the same vein, both the terms of the TRO in this case and the statutory scheme under § 741.31 place restrictions solely upon the respondent named in the injunction, and logically so: injunctions issued in cases of domestic violence are expressly intended to protect the petitioners who obtain them.  *See* Fla. Stat. § 741.30 ("Any person . . . who is either the victim of domestic violence . . . or has reasonable cause to believe he or she is in imminent danger of becoming the victim of any act of domestic violence, has standing in the circuit court to file a sworn petition for an injunction for protection against domestic violence."); Fla. Stat. § 741.31(4)(a) (speaking only to restrictions placed on the named respondent); *see also* TRO, ECF No. [39-8] at 2 ("Any violation of this injunction, whether or not at the invitation of Petitioner or anyone else, may subject Respondent to civil or indirect criminal contempt proceedings . . . .").  It is more than evident that Florida's domestic violence provisions were designed in order to protect victims of domestic violence.  To this end, the legislature focused not on the abuser but, rather, the victim and others who may require the State's protection.  *See* Fla. Stat. § 741.2902(1) ("It is the intent of the Legislature, with respect to domestic violence cases, that at the first appearance the court shall consider the safety of the *victim*, the *victim's children*, and *any other person who may be in danger* if the defendant is released, and exercise caution in releasing defendants." (emphasis added)).  Therefore, this Court was extremely reluctant to instruct the jury on a theory of aiding and abetting as well as the vague request for "other crimes."

The logic underlying this Court's reluctance and ultimate decision denying an instruction on aiding and abetting emanates not only from this legislative scheme, but also from the Supreme Court's decision in *Gebardi v. United States*, 287 U.S. 112 (1932).  In *Gebardi*, the

Supreme Court held that a woman who voluntarily crossed state lines in order to engage in sexual intercourse could not be liable for the violation of the Mann Act—criminalizing the interstate transport of women for "immoral purposes"—because the statute was "clearly directed against the acts of the transporter as distinguished from the consent of the subject of the transportation." *Id.* at 118. Although no court in this Circuit has specifically dealt with the issue, it is apparent that this same logic applies to the facts of this case. *See United States v. Falletta*, 523 F.2d 1198, 1199 (5th Cir. 1975) (noting that *Gebardi* has been adopted in other contexts akin to aiding and abetting where the relevant criminal statute imposes liability for one party to a transaction that necessarily involves two); *see, e.g., In re Meagan R.*, 42 Cal. App. 4th 17, 24, 49 Cal. Rptr. 2d 325, 330 (1996) ("[A]lthough generally a defendant may be liable for prosecution for conspiracy as an aider and abettor to commit a crime even though he or she is incapable of committing the crime itself, the rule does not apply where the statute defining the substantive offense discloses an affirmative legislative policy that the conduct of one of the parties shall go unpunished."). The Florida domestic violence provisions were enacted to protect the victims of domestic violence and, therefore, the Court properly denied Defendant's request to include an instruction on aiding and abetting a violation of the same.

The Court finds that the record lacks "substantial and ineradicable doubt as to whether the jury was properly guided in its deliberations," *Big Apple*, 783 F.3d at 804, and, accordingly, the Court declines to find that a new trial is warranted based on the Court's instructions.

### C.    Altering or Amending the Judgment

Last, Defendants seek a new trial or, in the alternative, request that the Court alter or amend the final judgment based on their assertion that the jury failed to follow the Court's

instructions and returned an improper "compromise" verdict.  This question relates solely to the jury's re-deliberation on the issue of damages.

A district court may grant a new trial "on all or some of the issues—and to any party . . . for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States . . . ."  Fed. R. Civ. P. 59(a).  Rule 59 also permits a court to alter or amend a judgment.  Fed. R. Civ. P. 59(e).  Similarly, under Rule 60(b), "the court may relieve a party or its legal representative from a final judgment, order, or proceeding" for a mistake, fraud, newly discovered evidence, "or any other reason that justifies relief."  *See* Fed. R. Civ. P. 60(b); *see also Sherrod*, 237 F. App'x at 424-25 ("The only grounds for granting [a Rule 59(e)] motion are newly-discovered evidence or manifest errors of law or fact." (quoting *In re Kellogg*, 197 F.3d 1116, 1119 (11th Cir. 1999))).   "Rule 59(e) may not be used 'to relitigate old matters, raise argument or present evidence that could have been raised prior to the entry of judgment.'"  *Sherrod* at 425 (quoting *Michael Linet, Inc. v. Village of Wellington, Fla.*, 408 F.3d 757, 763 (11th Cir. 2005)).  Although the two rules afford a party the same relief, "[a] significantly higher standard is generally used to decide whether a movant is entitled to relief under Rule 60(b)." *Vanderberg v. Donaldson*, 259 F.3d 1321, 1326 (11th Cir. 2001) (internal quotation and citation omitted).   As with Rule 50, the district court is granted substantial discretion in deciding these matters.  *See Willard v. Fairfield S. Co., Inc.*, 472 F.3d 817, 821 (11th Cir.2006) (Rule 59(e) reviewed for abuse of discretion); *Lambert v. Fulton County, Ga.*, 253 F.3d 588, 595, 598 (11th Cir. 2001) (Rule 60(b) reviewed for abuse of discretion).

Among the circumstances which require a new trial is where the jury has rendered a "compromise verdict."  *Collins v. Marriott Int'l, Inc.*, 749 F.3d 951, 960 (11th Cir. 2014) ("A motion for a new trial under Fed. R. Civ. P. 59 must be granted 'when the issues of liability and

damages were tried together and there are indications that the jury may have rendered a compromise verdict.'" (quoting *Mekdeci By & Through Mekdeci v. Merrell Nat. Labs., a Div. of Richardson-Merrell, Inc.*, 711 F.2d 1510, 1513 (11th Cir. 1983))).  "A compromise verdict results when jurors resolve their inability to make a determination with any certainty or unanimity on the issue of liability by finding inadequate damages.  However, an insufficient damages verdict, standing alone, does not necessarily indicate a compromise.  Ordinarily there must be other evidence demonstrating that the deficient monetary award resulted from an impermissible compromise." *Id.* (quoting *Mekdeci* at 1513-14).  "Given that Rule 606(b)(1) of the Federal Rules of Evidence generally prohibits courts from inquiring into the jury's deliberative process, courts try to ascertain whether a verdict was compromised by looking at the totality of the circumstances."  *Reider v. Philip Morris USA, Inc.*, No. 14-11494, 2015 WL 4256726, at *4 (11th Cir. July 15, 2015) (citation omitted).

Defendants contend that this is what has transpired here, namely, that the jury delivered a compromise verdict.  To recall, after substantial deliberations the jury returned a verdict in favor of Bozeman, awarding her $10,000 in compensatory damages (Question 4) and finding punitive damages by clear and convincing evidence (Question 7) in the amount of $50,000.  Inconsistent with a finding of punitive damages under the more-stringent clear and convincing evidence standard, the jury declined to award punitive damages on the lesser preponderance-of-the-evidence standard (Question 6).  Recognizing this dissonance, the Court instructed the jury to resolve the issue concerning punitive damages.  After reconsideration, the jury concluded that no liability for punitive damages existed and awarded Bozeman $60,000 in compensatory damages.  The Court did not instruct the jury to reconsider Question 4, that is, Bozeman's compensatory

damages amount.  Rather, the jury did so on its own volition.  Because of this, Defendants contend that the final verdict clearly evinces a compromise.  The Court disagrees.

The "compromise" in a compromise verdict occurs where the jury is undecided as to liability and compromises by finding in favor of the plaintiff but awards her zero damages or otherwise insufficient damages.  Clearly, this is not what occurred.  There was no auspice of contested liability nor was there an award of "insufficient damages."  In short, there was no "compromise" where the jury resolved the issue of liability with the understanding that no damages would be awarded.[9]  What the Court was presented with was an "inconsistent" verdict. "A verdict is inconsistent when there is no rational, non-speculative way to reconcile two essential jury findings."  *Reider*, 2015 WL 4256726, at *3 (internal quotation and formatting removed).  The solution in such a situation is to either "direct the jury to further consider its answers and verdict, or order a new trial."  *Id.* (citing Fed. R. Civ. P. 49(b)(3)-(4)) (further citations omitted).  Exercising this discretion, the Court instructed the jury to reconsider its verdict.  *See id.* (noting that this is often the "preferable" option).  Although the Court instructed the jury to reconsider the award of punitive damages, no limitation was placed on the additional deliberations and the jury was free to reconsider its entire verdict, including compensatory damages.  The Court will not interfere with such deliberations.  *See id.* at *4 (citing Fed. R. Civ. P. 606); *see also Univ. Computing Co. v. Lykes-Youngstown Corp.*, 504 F.2d 518, 546-47 (5th Cir. 1974) (instruction to re-deliberate was proper where jury initially returned verdict of punitive damages without corresponding actual damages and the subsequent award of $172,000 in compensatory damages was not improper).

---

[9] While Defendants contend that the rationale of disallowing a compromise verdict should apply with equal force to the purported compromise between compensatory and punitive damages, they have failed to cite any authority which would indicate that this form of alleged compromise is improper or otherwise merits an entirely new trial.

Additionally, the Court will not disturb the jury's award of compensatory damages. A district court which finds that a jury's award of damages is excessive may grant the defendant a new trial on this basis.  *Peer v. Lewis*, No. 06-60146-CIV, 2008 WL 2047978, at *17 (S.D. Fla. May 13, 2008) *aff'd*, No. 08-13465, 2009 WL 323104 (11th Cir. Feb. 10, 2009) (citing *Johansen v. Combustion Eng'g, Inc.*, 170 F.3d 1320, 1329 (11th Cir. 1999)).  Alternatively, "the court can order remittitur and reduce the damages."  *Id.* (citing *Simon v. Shearson Lehman Bros., Inc.*, 895 F.2d 1304, 1310 (11th Cir. 1990); *Wilson v. Taylor*, 733 F.2d 1539, 1549-50 (11th Cir. 1984)). A court may issue a remittitur if the "jury's award is unreasonable on the facts."  *Id.* at *14.  "[A] court has a mandatory duty to correct an unconstitutionally excessive verdict so that it conforms to the requirements of the due process clause."  *Johansen* at 1331 (citation omitted).  If remittitur is chosen as the appropriate avenue, it may not be done absent the plaintiff's consent.  *Johansen*, 170 F.3d at 1329 ("[N]o judgment for a remittitur may be entered without the plaintiff's consent because the Seventh Amendment prohibits the court from substituting its judgment for that of the jury's regarding any issue of fact.").

At a minimum, Defendants request that the Court reduce Bozeman's compensatory damages from $60,000, to $10,000, representing the jury's initial compensatory damages determination.  According to Defendants, the amended compensatory award was not supported by the evidence presented at trial.  The Court disagrees.  Essentially, Defendants seek to limit Bozeman's compensatory award to the cost of her attorney in the underlying criminal action against her.  However, Bozeman testified as to how the events forming the basis of this litigation affected her emotionally, both at the time of the arrest and subsequent to it, and to how the circumstances of her arrest exacerbated her previously-existing psychological and physiological issues.  Although Defendants would have the jury believe that the situation Bozeman found

herself in had no effect on her mental state, the jury was free to draw a different conclusion based on the evidence presented. Of important note is the deference given to a jury's determination of compensatory damages. Indeed, courts "are particularly deferential to the fact finder's determination of compensatory damage awards for intangible, emotional harms because the harm is so 'subjective and evaluating it depends considerably on the demeanor of the witnesses.'" *Griffin v. City of Opa-Locka*, 261 F.3d 1295, 1315 (11th Cir. 2001) (quoting *Ferrill v. Parker Grp., Inc.*, 168 F.3d 468, 476 (11th Cir. 1999)). Further, "[t]he Seventh Amendment prohibits re-examination of a jury's determination of the facts, which includes its assessment of the extent of the plaintiff's injuries." *Peer*, 2008 WL 2047978, at *4 (citing Kennon v. Gilmer, 131 U.S. 22, 30 (1889)). Bozeman's compensatory damages are not so grossly excessive as to merit reconsideration by a finder of fact or this Court. Accordingly, a new trial or remittitur is not warranted.

### III. CONCLUSION

For the foregoing reasons, it is hereby **ORDERED AND ADJUDGED** that the Motion, **ECF No. [88]**, is **DENIED**.

**DONE AND ORDERED** in Fort Lauderdale, Florida, this 24th day of August, 2015.

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:
Counsel of Record